# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SHAWN DREWERY obo SHAQUALIA FELDER**

**VERSUS**

**SID J. GAUTREAUX, III, IN HIS OFFICIAL CAPACITY AS SHERIFF OF EAST BATON ROUGE PARISH, ET AL.**

**CIVIL ACTION**

**NO. 18-376-JWD-RLB**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 4) filed by Defendants Sid J. Gautreaux, III, and Deputy Leroy Griffin (collectively, Defendants). Plaintiff Shawn Drewery, on behalf of Shaqualia Felder, opposes the motion. (Doc. 11.) Defendants have filed a reply. (Doc. 22.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

For the following reasons, Defendants' motion is granted in part and denied in part. The motion is granted in that all of Plaintiff's § 1983 claims are dismissed, except for his § 1983 claims against Griffin in his individual capacity for compensatory and punitive damages for false arrest and excessive force. The motion is denied in those respects and with respect to Plaintiff's state law claims.

## I. Relevant Factual Background

The following factual allegations are taken from Plaintiff's *Petition for Damages* (Pet., Doc. 1-3 at 2–6.) They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Shawqualia Felder ("Felder") is Plaintiff's minor daughter. (Pet. ¶ 3, Doc. 1-3.) Plaintiff files this suit on Felder's behalf. (Pet., Doc. 1-3 at 2.)

On or about February 7, 2017, Felder was arrested and charged with Battery of a Police Officer in Baton Rouge, Louisiana. (Pet. ¶ 3)  The arrest took place at Felder's school. (Pet. ¶ 4.)

According to Plaintiff, Deputy Griffin "had been abusing [Felder's] cousin who was about 14 years old by punching him, slamming him to the ground and hand cuffed him (sic)." (Pet. ¶ 6.) "[W]hile all these abuse (sic) were going on, [Felder] asked the defendant why he was handling her cousin like that knowing that he was a kid and could not defend himself." (Pet. ¶ 7.)  Felder "was crying" from the abuse. (Pet. ¶ 7.)

While Felder was in the hall, "no one touched the Deputy nor went near him because of what he was doing to . . . [Felder's] cousin." (Pet. ¶ 8.)  However, Griffin "started using vulgar language, harassing and intimidating [Felder]." (Pet. ¶ 8.)

Plaintiff alleges:

[W]hile the deputy started cursing her she cried some more, [Deputy Griffin] then punched her [i]n the face that sent excruciating pain through her body.  She was terrified and afraid for her life because of the rage the Deputy was exhibiting then. . . .

Deputy then picked her up and slammed her on the ground in a rage.  The force with which [Griffin] slammed [Felder] into the ground was so violent that she thought she will die.  Immediately, all her body started hurting.

(Pet. ¶¶ 9–10.)

Felder was a "small framed teenager" and was "badly hurt and in serious pain." (Pet. ¶ 11.) While Felder was on the floor, Griffin "rough handled her some more and hand cuffed her." (Pet. ¶ 11.)  Felder was "frightened to death" and "hysterical, scared that she thought she was seriously injured or dead." (Pet. ¶ 11.)

Critically, Plaintiff further alleges:

During all these times, [Felder] shows this Court that she never fought back and was helpless.  She avers that she never struck the officer nor was she able to defend herself in any way, shape or form because of her size.

(Pet. ¶ 12.)

Felder was ultimately taken to "Juvenile Detention without any medical treatment." (Pet. ¶ 13.)  Plaintiff took Felder to Our Lady of the Lake Regional Medical Center. (Pet. ¶ 13.)

Plaintiff claims that Griffin "failed to read [Felder] her rights nor had any probable cause before they arrested the plaintiff and their failure to do so subjected . . . [Felder] to unlawful arrest, wrongful imprisonment and malicious prosecution when she was wrongfully charged with Battery of a Police Officer." (Pet. ¶ 14.)  Plaintiff alleges false arrest, detention, and charge without reasonable or probable cause. (Pet. ¶ 16.)

Plaintiff also claims that Felder was "mercilessly beaten and battered" by Griffin and the unknown defendants, all of whom "used excessive force under the condition and circumstances and that such force was neither necessary nor were they provoked." (Pet. ¶ 15.)  Plaintiff maintains that Felder was subject to unnecessary and excessive force. (Pet. ¶ 17.)

According to Plaintiff, Felder continues to suffer from a variety of mental anguish damages. (Pet. ¶ 16.)

Additionally, Plaintiff makes the following allegations with respect to his official capacity claims:

Prior to **February 7, 2017,** The East Baton Rouge Parish Sheriff's Office developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the community by retaining officers like the defendant, **DEPUTY GRIFFIN**. . . .

It was only the policy and/or custom of the East Baton Rouge Parish Sheriff's Office to inadequately and improperly investigate citizen complaints of deputies misconduct (sic), and acts of misconduct were instead tolerated by the East Baton

Rouge Sheriff's Office, including but not limited to other incidents involving the same defendant herein. . . .

It was the policy and/or custom of the East Baton Rouge Parish Sheriff's Office to inadequately supervise and train it's (sic) deputies, including the defendant deputy, thereby failing to adequately discourage further constitutional violation on the part of the deputies. The Sheriff did not require appropriate in-service training, or re-training of officers who were known to have engaged in law enforcement misconduct.

As a result of the above described policies and customs, Deputy Sheriffs of the East Baton Rouge Parish's Office, including the defendant deputy, believed that their actions would not be properly monitored by supervisor deputies and the misconduct would not be investigated or sanctioned, but would be tolerated.

(Pet. ¶¶ 21–24.) As to Sheriff Gautreaux, Plaintiff asserts: "Defendant [Gautreaux] was at that time the supervisor and commanding officer of the defendant and thus was also liable as such." (Pet. ¶ 26.)

Plaintiff claims that Defendants acted "willfully, maliciously, and with callous and reckless indifference[.]" (Pet. ¶ 25.) Plaintiff claims compensatory and punitive damages. (Pet., Doc. 1-3 at 6.)

## II.    Relevant Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading

stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

III. **Discussion**

A. **Preliminary Issue – Consideration of Evidence**

Preliminary, the Court notes that both parties submit documentary evidence with their motion to dismiss, including a police report, an Internal Affairs report, and an eye-witness acount.

5

The Court must first decide whether to consider this evidence.

In general, pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6)[,] ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015). There are some exceptions to this standard. On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' " *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross and Blue Shield of Georgia, Inc.*, No. 14-11300, 2018 WL 2943339, at *3 (5th Cir. June 12, 2018) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted)).

As the Fifth Circuit has explained, "[i]f the district court does not rely on materials in the record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)). "[T]he mere submission [or service] of extraneous materials does not by itself convert a Rule 12(b)(6) [or 12(c) ] motion into a motion for summary judgment." *Id.* (quoting *Finley Lines Joint Protective Bd. v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (second alteration in original)). A district court, moreover, enjoys broad discretion in deciding whether to treat a motion to dismiss as a motion for summary judgment. *See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 280 n.6 (5th Cir. 1991).

The Fifth Circuit has recognized a limited exception to the general rules under Federal Rule of Civil Procedure 12(d) and related jurisprudence. The Fifth Circuit has approved district courts' consideration of documents attached to a motion to dismiss, when such documents are referred to

in the plaintiff's complaint and are central to the plaintiff's claim. *See Werner v. Dept. of Homeland Sec.*, 441 Fed. App'x. 246, 248 (5th Cir. 2011); *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins*, 224 F.3d at 498-99.

Here, the Court will exercise its discretion and decline to consider the documents submitted by the parties. None of these documents are central to the Plaintiff's claim, and the Court is disinclined to convert the instant motion to one for summary judgment. Consequently, the Court will decide this motion based on the Petition alone.

### B. Claims against Gautreaux and Griffin in their Individual Capacity

### 1. Standard for Qualified Immunity

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034 (1987)). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

" 'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct.

548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)). " 'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)). " 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 137 S. Ct. at 552 (internal quotation marks omitted)). "But . . . [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).

### 2. Claims Against Gautreaux

#### a. Parties' Arguments

Defendants maintain that, to the extent Plaintiff has asserted claims against Gautreaux in his individual capacity, such claims should be dismissed. Defendants argue that Plaintiff fails to allege any personal involvement by Gautreaux in any alleged constitutional violation. Gautreaux was not involved in the incident at issue. Further, Plaintiff's reference to inadequate training, supervising, and investigation are conclusory; "Plaintiff's generalized assertions without reference to specific incidents and/or customs are without substance on their face." (Doc. 4-1 at 6.) Contrary to Plaintiff's argument, Gautreaux cannot be vicariously liable to Plaintiff. To the extent Plaintiff makes an individual capacity claim against Gautreaux, it must be dismissed.

Plaintiff responds that he has stated a claim against Gautreaux for a violation of Felder's right to equal protection and her right to be free from unreasonable searches and seizures. According to Plaintiff, Defendant cannot simply rely on the fact that he may prevail at trial. Further, Defendants cannot rely on Plaintiff's complaint in Juvenile Court, as there are other

reasons why an individual may plead guilty. Further, Plaintiff was already "seized" when she was beaten. Lastly, regardless of the government's discretion, it cannot commit constitutional violations, and "therefore, an intentional tort that amounts to a constitutional violation is actionable under the FTC A (sic)." (Doc. 11 at 6 (citations omitted).)

Defendants largely repeat themselves in reply. Defendants assert that Plaintiff failed to allege that Gautreaux was personally involved in Felder's incident. Plaintiff generally alleges that Gautreaux failed to properly investigate and supervise, but Plaintiff has not overcome qualified immunity by providing specific incidents and customs.

### b. Relevant Standard

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Simon v. LeBlanc*, 694 F. App'x 260, 261 (5th Cir. 2017) (per curiam) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). " 'A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.' " *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). " 'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.' " *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations and emphasis in *Gates*)).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Board of Cty. Comm'rs of*

*Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). " 'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). " 'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.' " *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Additionally, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992). Nevertheless, "[l]iability for failure to promulgate policy . . . require[s] that the defendant . . . acted with deliberate indifference." *Id.* As the Fifth Circuit stated with respect to "failure-to-train" claims (and, by "logical" analogy, other "failure-to" claims):

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat* superior liability.

*Porter*, 659 F.3d at 447 (citations, alterations, and quotations omitted).

### c. Analysis

Applying the above standard, Defendants' motion to dismiss the claims against Gautreaux in his individual capacity is easily granted. Defendants are correct that Plaintiff alleges absolutely no personal involvement by Gautreaux in any of the actions taken by Griffin. Gautreaux cannot be liable on this basis.

Further, though Plaintiff asserts in a general manner that the EBRSO failed to take certain actions (i.e., failed to "investigate citizen complaints of deputies misconduct (sic)", failed to "adequately discourage further constitutional violations on the part of deputies," and failed to adequately train deputies (Pet. ¶¶ 21–24)), all of these allegations are conclusory and wholly inadequate. As Defendants argue, Plaintiff has failed to allege any other specific incidents that would demonstrate specific policies. Further, even if Plaintiff had alleged specific policies, the lack of such prior incidents reflects a lack of actual or constructive notice of any of these alleged deficiencies. Plaintiff completely fails to allege any sort of deliberate indifference by Gautreaux. The case law cited by Plaintiff is largely inapplicable, unavailing, and not binding authority.

In light of all of these failings, Defendant's motion is granted with respect to Gautreaux's individual capacity claims, and said claims will be dismissed.

### 3. Claims Against Griffin

### a. Parties' Arguments

Defendants also contend that "Plaintiff makes conclusory allegations with no factual predicate for her conclusion that Deputy Griffin violated Felder's constitutional rights[.]" Further, Griffin is entitled to qualified immunity because Plaintiff's allegations against Griffin are conclusory. Plaintiff has failed to plead Felder's own conduct, and Plaintiff fails to allege the

outcome of the criminal charges against Felder. Plaintiff's conclusory allegations do not overcome qualified immunity.

Plaintiff's arguments with respect to Griffin are largely the same as those raised against Gautreaux. These arguments are recited above.

In reply, Defendants again assert that Plaintiff's claims against Griffin are conclusory. Felder was charged with battery of a police officer, but Plaintiff fails to allege any facts to demonstrate that Griffin's actions were objectively unreasonable in light of clearly established law. Plaintiff's cases are again distinguishable.

### b. Relevant Standards

### i. False Arrest and False Imprisonment Claims

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' " *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593, 160 L. Ed. 2d 537 (2004) (quoting U.S. Const. amend. IV). A warrantless arrest by a law officer is unreasonable under the Fourth Amendment if there is no probable cause to believe that a crime has been or is being committed." *See id.* (citations omitted). Probable cause exists when the "totality of the facts and circumstances" within an officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. *Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir. 2001) (internal quotation and citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152–53, 125 S. Ct. at 593 (citations omitted). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id.*, 543 U.S. at 153, 125 S. Ct. at 593–94 (citations omitted). "That

is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.*, 543 U.S. at 153, 125 S. Ct. at 594.

To establish a Fourth Amendment claim for false imprisonment, Plaintiff must prove: (1) an intent by defendant to confine her, (2) acts resulting in confinement, (3) Plaintiff's consciousness of confinement or resulting harm, and (4) the deprivation of a constitutional right, such as the right not to be arrested or detained without probable cause. *Allen v. Normand*, 2009 WL 2448253 at *13 (E.D. La. Aug. 7, 2009). A plaintiff must establish that the defendant's misconduct exceeds mere negligence. *Id.*; *see also, e.g., Sanchez v. Swyden*, 139 F.3d 464, 469 (5th Cir. 1998) (actions must go "beyond mere negligence" before tort of false imprisonment "takes on constitutional dimensions"; although plaintiff consistently asserted his innocence and officers were in possession of exculpatory information, there was "considerable debate" about whether plaintiff's appearance matched that of a wanted suspect); *Winfrey v. San Jacinto Cty.*, 481 F. App'x 969, 980 (5th Cir. 2012) (errors or omissions occasioned by "carelessness or run-of-the-mill negligence" do not state a constitutional claim, although those occasioned by "recklessness" might). The "constitutional torts" of false arrest, unreasonable seizure, and false imprisonment require a showing of no probable cause. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001).

### ii.    Equal Protection

Under the Equal Protection Clause of the Fourteenth Amendment, no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause demands that similarly situated persons be treated similarly under the law." *Sonnier v. Quarterman*, 476 F.3d 349, 367–68 (5th Cir. 2007) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982)). However, the Supreme Court has stated:

> [t]he Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons. We have attempted to reconcile the principle with the reality that by stating that, if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.

*Id.* (quoting *Romer v. Evans,* 517 U.S. 620, 116 S. Ct. 1620, 1627, 134 L. Ed. 2d 855 (1996)) (internal citations omitted)). "By contrast, if a classification does target a suspect class or impact a fundamental right, it will be strictly scrutinized and upheld only if it is precisely tailored to further a compelling government interest." *Id.* (citing *Plyler v. Doe*, 457 U.S. at 217-18, 102 S. Ct. 2382).

"The purpose of the Equal Protection Clause is to secure every person within the state's jurisdiction against *intentional* and *arbitrary* discrimination." *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 1075, 145 L. Ed. 2d 1060 (2000)). " 'Even if a neutral law has a disproportionately adverse impact ..., it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose.' " *Id.* (quoting *United States v. Galloway,* 951 F.2d 64, 66 (5th Cir. 1992)).

Thus, "[t]o prove a cause of action under § 1983, the plaintiff must demonstrate that . . . officials acted with a discriminatory purpose." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995) (citations omitted); *see also Sonnier*, 476 F.3d at 368 ("It is well established that showing of discriminatory intent or purpose is required to establish a valid equal protection claim." (quoting *United States v. Crew,* 916 F.2d 980, 984 (5th Cir. 1990)). "Discriminatory purpose, in this context, implies that the decision maker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." *Sonnier*, 476 F.3d at 368 (citing *Crew*, 916 U.S. at 984); *Woods*, 51 F.3d at 580 (same) (citation omitted).

### iii.    Excessive Force

It is unclear from Plaintiff's opposition memorandum whether he asserts a claim for excessive force under § 1983. However, allegations of excessive force run throughout Plaintiff's complaint, so, out of an abundance of caution, the Court will analyze this claim.

"[A]ll claims that law enforcement officers have used excessive force … in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Bazan ex rel. Bazan v. Hidalgo County,* 246 F.3d 481, 487 (5th Cir. 2001) (emphasis and citation omitted). The Fifth Circuit has recognized:

> It is clearly established law in this circuit that in order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.

*Id.* (citations omitted). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (citation omitted).

"Whether the amount of force used is clearly 'excessive' and 'unreasonable' depends on 'the facts and circumstances of each particular case." *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (citing *Deville*, 567 F.3d at 167). "Factors to consider include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Deville*, 567 F.3d at 167 (citation and quotations omitted). Further, the Supreme Court has cautioned, "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989). The Supreme Court has further instructed:

> As in other Fourth Amendment contexts . . . the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions

are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Id.* at 397 (citations omitted).

### c. Analysis

The Court will deny the motion to dismiss the claims against Griffin in his individual capacity in part. The Petition specifically alleges how Griffin "punched" Felder in her face in a way that "sent excruciating pain through her body." (Pet.¶ 9, Doc. 1-3.) Griffin "then picked [Felder] up and slammed her on the ground in a rage"; Felder was slammed "so violently that she thought she [would] die." (Pet.¶ 10.) Griffin was "badly hurt and in serious pain." (Pet. ¶ 11.) Most importantly, the Petition specifically states that "no one touched the Deputy nor went near him because of what he was doing to . . . [Felder's] cousin." (Pet. ¶ 8.) Plaintiff also claims: "During all these times, . . . [Felder] never fought back and was helpless. She avers that she never struck the officer nor was she able to defend herself in anyway, shape or form because of her size." (Pet. ¶ 12.)

These allegations sufficiently state claims for false arrest and excessive force. Under the facts alleged, the force used against the Plaintiff was clearly excessive to the need, and no reasonable officer would believe that such force against a young girl was reasonable. Further, construing the Petition in a light most favorable to the Plaintiff and drawing inferences in his favor—particularly the allegations that no one, including Felder, struck Griffin and that Felder was unable "to defend herself in anyway,"—the Court finds that no reasonable officer (including Griffin) could conclude that there was probable cause to arrest Felder for Battery of an Officer.

Lastly, the elements of a false imprisonment claim can be inferred from the facts alleged. Accordingly, the motion to dismiss these claims will be denied.

However, Plaintiff has failed to state any equal protection claim. Plaintiff's Petition is devoid of any allegation that Griffin acted with a discriminatory intent or purpose. Consequently, the motion to dismiss this claim will be granted.

### C. Claims Against Gautreaux and Griffin in their Official Capacity

#### 1. Parties' Arguments

Defendants maintain that Plaintiff failed to identify any specific policy or custom of Gautreaux that resulted in a constitutional violation. Plaintiff's allegations are vague and conclusory. Plaintiff has also failed to allege any pattern or practice that was the moving force of a constitutional violation. Deputy Griffin was also not a final policymaker.

Plaintiff wholly fails to make any substantive argument about any official capacity claim.

Defendants largely repeat themselves in reply.

#### 2. Relevant Standards

##### a. Official Capacity Claims Generally

"An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent. To determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983." *Romain v. Governor's Office of Homeland Sec.*, No. 14-660, 2016 WL 3982329, at *6 (M.D. La. July 22, 2016) (citations and quotations omitted). At the outset, it should be noted that "a federal court may [not] apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under . . . § 1983." *Leatherman v. Tarrant Cty. Narcotics*

*Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161, 122 L. Ed. 2d 517 (1993)

"Section 1983 offers no *respondeat superior* liability." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). "Municipalities face § 1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . .'" *Id.* (quoting *Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). That is, "[a] municipality is liable only for acts directly attributable to it 'through some official action or imprimatur.' " *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.' " *Id.* (quoting *Monell*, 436 U.S. at 691, 98 S. Ct. 2018). The Plaintiff must allege "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541–42 (quoting *Piotrowski*, 237 F.3d at 578).

"A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), *on reh'g,* 739 F.2d 993 (5th Cir. 1984). "Official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render

the municipality liable under § 1983 unless they execute official policy as above defined."

*Id.*

With respect to practices and customs: "A pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.' " *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.' " *Id.* (quoting *Webster,* 735 F.2d at 842). "It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.' " *Id.* at 850–51 (quoting *Piotrowski,* 237 F.3d at 582 (citations omitted)). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.' " *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)).

"A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.' " *Id.* (quoting *McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir.1989)). Thus, in *Pineda*, the Fifth Circuit held that eleven instances of warrantless entry did not support a pattern of unconstitutional warrantless entry. *Pineda*, 291 F.3d at 329. In *Peterson*, the Fifth Circuit found that 27 complaints of excessive force between 2002 and 2005 were insufficient to constitute a pattern, as almost all of the incidents involved small crimes with minor injuries, and the police force was large. *Peterson*, 588 F.3d at 851.

As to the policymaker, "state law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity." *Causey v. Par. of*

*Tangipahoa*, 167 F. Supp. 2d 898, 907 (E.D. La. 2001) (quoting *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996)); *see also Valle*, 613 F.3d at 542 (citing *Pembaur*, 475 U.S. at 482, 106 S. Ct. 1292) ("Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law."). "Under Louisiana law, it is clear that 'the Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office.' " *Id.* (citing *Jones v. St. Tammany Parish Jail,* 4 F. Supp. 2d 606, 614 (E.D. La. 1998) (citations omitted)). "Indeed, 'the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff.' " *Id.* (citing *Burge v. Parish of St. Tammany,* 187 F.3d 452, 470 (5th Cir. 1999); *Thomas v. Frederick,* 766 F. Supp. 540 (W.D. La. 1991) (citations omitted); *Jenkins v. Jefferson Parish Sheriff's Office,* 402 So.2d 669 (La. 1981)).

Plaintiff also has the "burden of demonstrating actual or constructive knowledge of the policy-making official for the municipality[.]" *Pineda*, 291 F.3d at 330. "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information." *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc)). "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.* (quoting *Bennett*, 728 F.2d at 768).

"The third prong requires a plaintiff to prove 'moving force' causation." *Valle*, 613 F.3d at 542. "To succeed, 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.' " *Id.* (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S.

397, 404, 117 S. Ct. 1382 (1997)). "That is, 'the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.' " *Id.* (quoting *Brown*, 520 U.S. at 411, 117 S. Ct. 1382). "Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.' " *Id.* (quoting *Piotrowski*, 237 F.3d at 579).

Additionally, "[p]laintiffs must meet a heightened standard of causation in order to hold a municipality liable under § 1983." *Valle*, 613 F.3d at 546 (citing *City of Canton*, 489 U.S. at 391–92, 109 S. Ct. 1197). Plaintiff must show that the municipal policy was the " 'moving force' that caused the specific constitutional violation." *Id.* (citing *Bryan County*, 219 F.3d at 461). "In other words, the plaintiff must establish a 'direct causal link' between the municipal policy and the constitutional injury." *Id.* (citing *Brown*, 520 U.S. at 404, 117 S. Ct. 1382).

### b. " Failure-to" Claims

To state a claim for a claim against a municipality for failure to train, "a plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle*, 613 F.3d at 544 (citation omitted). "All failure to act claims, such as . . . failure to train [or] supervise . . . involve the same basic elements: inadequacy, deliberate indifference, and causation." *Snow v. City of El Paso, Texas*, 501 F. Supp. 2d 826, 833 n. 5 (W.D. Tex. 2006) (citations omitted).

"The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Valle*, 613 F.3d at 544 (quoting *Bryan County*, 219 F.3d at 457). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers

must perform." *Id.* (quoting *City of Canton*, 489 U.S. at 390, 109 S. Ct. 1197).

Concerning the causation requirement, the Fifth Circuit "require[s] that the municipality's failure to train be the 'moving force' that caused the specific constitutional violation." *Valle*, 613 F.3d at 546 (citing *Bryan County*, 219 F.3d at 461). "In other words, the plaintiff must establish a 'direct causal link' between the municipal policy and the constitutional injury." *Id.* (quoting *Brown*, 520 U.S. at 404, 117 S. Ct. 1382). The Fifth Circuit has "said that the connection must be more than a mere 'but for' coupling between cause and effect. The deficiency in training must be the actual cause of the constitutional violation." *Id.* (citing *Thompson v. Connick*, 578 F.3d 293, 300 (5th Cir. 2009)).

"[D]eliberate indifference is a stringent standard of fault, requiring [allegations] that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011). Plaintiff "must show that 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.' " *Valle*, 613 F.3d at 547 (quoting *City of Canton*, 489 U.S. at 390, 109 S. Ct. 1197). In *Connick*, the Supreme Court summarized this standard as follows:

> Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "policy of inaction" in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution. A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities[.] . . . *see also Pembaur, supra,* at 483, 106 S. Ct. 1292 (opinion of Brennan, J.) (" [M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ...").

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick*, 563 U.S. at 61–62, 131 S. Ct. at 1360 (citations and quotations mostly omitted).

A showing "of deliberate indifference is difficult, although not impossible, to base on a single incident." *Valle*, 613 F.3d at 549 (citation omitted). "The 'single incident exception' is extremely narrow; a plaintiff must prove that the *highly predictable consequence* of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id.* (emphasis by *Valle*, citations and quotations omitted).[1]

Similarly, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992).

---

[1] For example, in *Connick*, the Supreme Court summarized the type of scenario envisioned by this exception:

In *Canton*, the [Supreme] Court left open the possibility that, "in a narrow range of circumstances," a pattern of similar violations might not be necessary to show deliberate indifference. The Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. Given the known frequency with which police attempt to arrest fleeing felons and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights, the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights. The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.

*Connick*, 563 U.S. at 63–64, 131 S. Ct. at 1361 (internal citations omitted).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011) (citation omitted). The Supreme Court advises that the heightened standard of fault and causation for these claims is intended to prevent federal courts from engaging "in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." *City of Canton*, 389 U.S. at 392, 109 S. Ct. at 1206 (internal citations omitted).

### 3. Analysis

An exquisite analysis of Plaintiff's claims is not necessary. Plaintiff completely failed to respond to any of Defendants' arguments about his official capacity claims. As a matter of law, Plaintiff has thus waived any opposition. *See JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal. By analogy, failure to brief an argument in the district court waives that argument in that court." (citations and internal quotations omitted)). On this ground alone, Plaintiff's official capacity claim could be dismissed.

Even putting this aside, the Court finds that Plaintiff has failed to state a valid official capacity claim, as there are numerous problems with the paltry allegations made in the Petition.[2]

---

[2] Again, these allegations are as follows:

> Prior to **February 7, 2017,** The East Baton Rouge Parish Sheriff's Office developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the community by retaining officers like the defendant, **DEPUTY GRIFFIN**.

> . . . It was only the policy and/or custom of the East Baton Rouge Parish Sheriff's Office to inadequately and improperly investigate citizen complaints of deputies misconduct (sic), and acts of misconduct were instead tolerated by the East Baton Rouge Sheriff's Office, including but not limited to other incidents involving the same defendant herein.

First, as stated above, the Sheriff is the final policymaker for the EBRSO. Thus, any official capacity claim against Griffin must be dismissed.

Second, Plaintiff has failed to identify specific policies or customs that were the moving force of any constitutional violation. The official capacity claims referenced in the Petition are wholly conclusory. Even putting this aside, Plaintiff totally fails to allege any pattern of sufficiently numerous, similar incidents. *See Peterson*, 588 F.3d at 851; *Pineda*, 291 F.3d at 329.

Third, other reasons warrant dismissal as well. As concluded elsewhere in this opinion, there is absolutely no showing of deliberate indifference by Sheriff Gautreaux; there is nothing indicating that Gautreaux "disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61, 131 S. Ct. at 1360. And, even if Plaintiff had met all of the other elements of a *Monell* claim, Plaintiff has failed to demonstrate that any of these problems was the moving force of any constitutional violation. For all these reasons, Plaintiff's official capacity claims will be dismissed.

### D. Punitive Damages Claim

#### 1. Parties' Arguments

Defendants argue that it is well established that municipalities are not subject to punitive damages. Thus, any claim for punitive damages against Defendants in their official capacity must

---

. . . It was the policy and/or custom of the East Baton Rouge Parish Sheriff's Office to inadequately supervise and train it's (sic) deputies, including the defendant deputy, thereby failing to adequately discourage further constitutional violation on the part of the deputies. The Sheriff did not require appropriate in-service training, or re-training of officers who were known to have engaged in law enforcement misconduct.

As a result of the above described policies and customs, Deputy Sheriffs of the East Baton Rouge Parish's Office, including the defendant deputy, believed that their actions would not be properly monitored by supervisor deputies and the misconduct would not be investigated or sanctioned, but would be tolerated.

(Pet. ¶¶ 21–24.)

be dismissed. As to the individual capacity claims, punitive damages are only appropriate if the official conduct was "motivated by evil motive or intent" or demonstrates "reckless or callous indifference" to constitutional rights. Here, Gautreaux was not personally involved in any constitutional violation, and Plaintiff has failed to allege anything to suggest that Griffin's conduct meets such a standard.

Plaintiff contend that the Court should look to Louisiana law to determine if punitive damages apply. Plaintiff further urges that punitive damages are recoverable in § 1983 cases.

Defendants largely repeat themselves in reply. They urge that Defendant's case law is inapposite.

## 2. Analysis

Defendants are again correct in their assessment of the law. The Supreme Court has held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983). However, the Supreme Court has also held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981)

Thus, Defendants are correct on two points. First, Defendants cannot be liable in their official capacities for punitive damages, even if such claims had survived. Second, Defendants are also correct that Gautreaux cannot be liable for punitive damages in his individual capacity; as amply demonstrated above, Gautreaux had no personal involvement in the underlying tort.[3]

---

[3] The Court also notes that Plaintiff cannot rely on state law for punitive damages (even for his pendent claims). The Louisiana Civil Code currently allows for punitive damages only in cases of motor-vehicle accidents caused by intoxicated drivers and in cases of sexual molestation of a child. *See* Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law* § 7.02 (perm. ed., rev. vol 2013) (citing La. Civ. Code arts. 2315.4, 2315.7).

However, the Court disagrees with Defendants in that Plaintiff has adequately alleged a claim for punitive damages against Griffin in his individual capacity. A reasonable jury could infer from Griffin's alleged misconduct toward Felder, outlined above, that, at the very least, Griffin acted with reckless or callous indifference to Felder's rights. In this respect, Defendant's motion is denied.

### E. State Law Claims

Defendants ask that, if the Court dismisses all of Plaintiff's federal claims, then the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff urges that he has stated various state law claims (including unlawful or false arrest, wrongful imprisonment, excessive force, and malicious prosecution). Plaintiff argues that the Court should reject Defendants' arguments. Because the Court has found that Plaintiff adequately stated claims against Griffin in his individual capacity, the Court will deny this part of Defendant's motion.

### F. Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated the standard as follows:

When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013). Finally, one leading treatise explained:

As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here, though Plaintiff makes no specific request to amend his Petition if there are deficiencies, the Court will act in accordance with the "wise judicial practice" and general rule and allow leave to amend.

Nevertheless, the Court cautions Plaintiff of his obligations under Rule 11 of the Federal Rules of Civil Procedure. By submitting an amended complaint to the Court, counsel for the Plaintiff is certifying that, to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[] . . . the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Many of Plaintiff's legal arguments toe the line of this rule, so the Court cautions Plaintiff to abide by Rule 11.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 4) filed by Defendants Sid J. Gautreaux, III, and Deputy Leroy Griffin is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** in that all of Plaintiff's § 1983 claims are dismissed, except for his § 1983 claims against Griffin in his individual capacity for compensatory and punitive damages for false arrest and excessive force. In those respects, and with respect to Plaintiff's state law claims, the motion is **DENIED**. Plaintiff is given twenty-eight (28) days in which to amend his complaint to cure the deficiencies therein. If Plaintiff fails to do so, the insufficient claims will be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on <u>February 8, 2019.</u>


            _____
            **JUDGE JOHN W. deGRAVELLES**
            **UNITED STATES DISTRICT COURT**
            **MIDDLE DISTRICT OF LOUISIANA**